RECEIVED
MAR - 9 2016
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| v. | : | Crim. No. 16-107 (AET) - 01 |
| JAY FUNG | : | 18 U.S.C. § 371 |

## INFORMATION
(Conspiracy to Commit Securities Fraud)

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

### Background

1. At all times relevant to this Information:

   a. Defendant JAY FUNG was an investor who resided in Florida.

   b. Co-conspirator Kevin Dowd ("Dowd") was a registered representative who worked at a Florida branch office of a global wealth management firm (the "Firm") and held the titles of Second Vice President and Financial Advisor.

   c. The NASDAQ Stock Market, or "NASDAQ," was the largest electronic equity securities trading market in the United States and was the second largest equities-based exchange in the world based on market capitalization. NASDAQ did not have a central trading floor. Instead, it relied on computer servers to facilitate all trading activity. Since at least as early as 2006, NASDAQ maintained computer servers in or around Carteret, New Jersey.

    d. Gilead Sciences Inc. ("Gilead") was a biotechnology company based in Foster City, California, and was engaged in the business of developing, manufacturing, and marketing antiviral drugs to treat patients infected with HIV, hepatitis B, and influenza. Gilead's stock was registered with the U.S. Securities and Exchange Commission ("SEC") and was publicly traded on the NASDAQ stock exchange.

    e. Pharmasset Inc. ("Pharmasset") was a pharmaceutical company based in Princeton, New Jersey, and was engaged in the business of developing, manufacturing, and marketing antiviral drugs. From in or about April 2007 through in or about January 2012, Pharmasset's stock was registered with the SEC and was listed on the NASDAQ stock exchange under the ticker symbol "VRUS."

    f. The "Director" served as a member of Pharmasset's Board of Directors during the relevant time period and was a client of the Firm.

### The Pharmasset Inside Information

  2. On or about September 2, 2011, Gilead made an initial offer to acquire Pharmasset for $100 per share in cash. Thereafter, in or about November 2011, Gilead increased its offer for Pharmasset to approximately $130 per share. Both of these offers constituted material nonpublic information and were communicated to Pharmasset's Board of Directors and key executives, including the Director.

3. In or about November 2011, Dowd became aware, through his work at the Firm, that Pharmasset was going to be sold for a significant profit per share (the "Pharmasset Inside Information").

4. After receiving the Pharmasset Inside Information, Dowd, on or about November 18, 2011, communicated the Pharmasset Inside Information to defendant FUNG.

5. Defendant FUNG purchased call options and shares of Pharmasset on or about November 18, 2011, based upon the Pharmasset Inside Information.

6. On or about November 21, 2011, Gilead publicly announced that it had entered into an agreement to acquire Pharmasset for approximately $11 billion, or $137 per share in cash. The purchase price represented an approximately 89% premium over Pharmasset's closing price of $72.67 on November 18, 2011. In response to the announcement, Pharmasset's stock price increased to $134.14 per share at the close of trading on November 21, 2011.

7. On or about November 21, 2011, following the public announcement of Gilead's acquisition of Pharmasset, defendant FUNG sold the Pharmasset shares and options he had purchased on November 18, 2011, for total illegal profits of more than $250,000.

8. In or about January 2012, defendant FUNG gave Dowd a check in the amount of approximately $35,000 in exchange for Dowd's provision of the Pharmasset Inside Information.

3

## The Conspiracy

9. In or about November 2011, in the District of New Jersey and elsewhere, defendant

JAY FUNG

did willfully and knowingly conspire and agree with others to commit offenses against the United States, namely, securities fraud, by using and employing, in connection with the purchase and sale of securities through interstate commerce and the mails, manipulative and deceptive devices, including the purchase and sale of a security of an issuer on the basis of material nonpublic information about the security and issuer, in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, namely, by executing and causing others to execute the securities transactions described above, in whole or in part, on material nonpublic information, contrary to Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## Object of the Conspiracy

10. The object of the conspiracy was for defendant FUNG and Dowd to enrich themselves through the purchase of Pharmasset securities on the basis of material nonpublic information.

## Manner and Means of the Conspiracy

11. It was part of the conspiracy that Dowd misappropriated the Pharmasset Inside Information in violation of: (1) the fiduciary and other duties of trust that he owed to the Firm and the Director; (2) the expectations of confidentiality of the Firm; and (3) the Firm's policies and procedures regarding the use and safekeeping of confidential and material, nonpublic information.

12. It was further part of the conspiracy that Dowd passed the Pharmasset Inside Information to defendant FUNG.

13. It was further part of the conspiracy that defendant FUNG executed and caused to be executed securities transactions for his benefit based in whole or in part on the Pharmasset Inside Information provided by Dowd, knowing that the Pharmasset Inside Information had been disclosed by Dowd in violation of the duties of trust and confidence that Dowd owed to the Firm and its clients.

14. It was further part of the conspiracy that defendant FUNG paid Dowd for Dowd's provision of the Pharmasset Inside Information.

## Overt Acts

15. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the District of New Jersey and elsewhere:

    a. On or about November 18, 2011, Dowd called defendant FUNG and provided defendant FUNG the Pharmasset Inside Information.

    b. On or about November 18, 2011, defendant FUNG purchased stock and options of Pharmasset based upon the Pharmasset Inside Information, in part by using a brokerage account at a brokerage firm in New Jersey.

    c. On or about November 21, 2011, defendant FUNG sold stock and options of Pharmasset, in part by using a brokerage account at a brokerage firm in New Jersey.

    d. In or about January 2012, defendant FUNG gave Dowd a check in the amount of approximately $35,000 in exchange for Dowd's provision of the Pharmasset Inside Information.

In violation of Title 18, United States Code, Section 371.

## **FORFEITURE ALLEGATION**

1.      The allegations contained in this Information are realleged and incorporated by reference as though set forth in full herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.      Upon conviction of the offense charged in this Information, defendant FUNG shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense, and all property traceable to such property.

3.      If by any act or omission of defendant FUNG any of the property subject to forfeiture herein:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party;

   c.   has been placed beyond the jurisdiction of the court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be subdivided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by 28 U.S.C. § 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

_____
PAUL J. FISHMAN
United States Attorney


**CASE NUMBER:** _____

**United States District Court**
**District of New Jersey**

**UNITED STATES OF AMERICA**

v.

**JAY FUNG**

**INFORMATION FOR**

18 U.S.C. § 371

**PAUL J. FISHMAN**
UNITED STATES ATTORNEY, NEWARK, NEW JERSEY

ANDREW KOGAN
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
973.645.2700